PEOPLE v BORNEY

Docket No. 48395. Submitted June 2, 1981, at Grand Rapids.—Decided October 20, 1981.

Wendell L. Borney was convicted of delivery of a controlled substance and subsequently pled guilty to an habitual offender charge, Ingham Circuit Court, Robert Holmes Bell, J. Defendant appeals, alleging several errors. *Held:*

1. The trial court properly applied the objective test when determining that the defendant was not entrapped.

2. The record supports the trial court's decision not to rule, at a hearing on the issue of entrapment, on the defendant's proffered procuring agent defense.

3. The trial court properly exercised its discretion in allowing the use of evidence of some of the defendant's prior convictions for impeachment of the defendant's testimony while disallowing evidence of another prior conviction.

4. The trial court properly quashed a subpoena *duces tecum.* The defendant's rights were adequately protected by the opportunity for cross-examination as to the information requested by the subpoena.

5. Defendant was not denied due process of law by the failure to notify him of the prosecution's attempt to secure a court order to compel the police to conduct a second test on the controlled substance.

6. The trial court's refusal to give a portion of a standard jury instruction was not error where the record indicates that the jury was adequately informed of its duty.

7. The prosecutor did not file the information charging defen-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.

[2] 21A Am Jur 2d, Criminal Law §§ 770, 998.
   23 Am Jur 2d, Deposition and Discovery §§ 307, 308.
   Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

[3] 23 Am Jur 2d, Depositions and Discovery §§ 318, 322.

[4] 75 Am Jur 2d, Trial §§ 712, 714.

[5] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 17.5, 18.

dant as an habitual offender in an untimely manner. The case of *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), setting forth the requirements for bringing such charges does not apply to this case.

Affirmed.

1. APPEAL — CRIMINAL LAW — FAILURE TO OBJECT.

Failure to object to testimony at trial precludes appellate review unless the alleged error results in manifest injustice.

2. CRIMINAL LAW — EVIDENCE — DISCOVERY.

Discovery should be granted in a criminal case where the information sought is necessary to a fair trial and a proper preparation of a defense; the refusal to grant discovery to a defendant is not reversible error if the defendant's rights can be fully protected by means of cross-examination.

3. CRIMINAL LAW — EVIDENCE — TESTING OF EVIDENCE — NOTICE.

A defendant is not entitled to notice prior to any testing or orders for testing of incriminating evidence by a police laboratory, and the defendant is not denied due process by the failure to so notify him where he is subsequently informed of the result of the test and offered the opportunity for cross-examination regarding the results of the test.

4. CRIMINAL LAW — JURY INSTRUCTIONS.

A trial court is not obliged to give a criminal jury instruction as it is written as long as the court adequately informs the jury of its duty.

5. CRIMINAL LAW — HABITUAL OFFENDERS.

The requirement that a prosecutor must proceed promptly, if at all, against a defendant as an habitual offender applies to cases which were on appeal on August 28, 1979, and all cases in which the original trial was concluded or guilty plea was taken more than 20 days after August 28, 1979.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Charles M. Sibert,* Chief Appellate Attorney, for the people.

*Emery & DeVine,* for defendant on appeal.

Before:  R. B.  Burns,  P.J.,  and  Allen  and  T.
Gillespie,* JJ.

T. Gillespie, J. Defendant was convicted by a
jury of violating MCL 333.7401(1), (2)(a)(iv); MSA
14.15(7401)(1), (2)(a)(iv), by delivery of a controlled
substance in an amount less than 50 grams. Defen-
dant subsequently pled guilty to an habitual crimi-
nal charge filed on August 15, 1979. Defendant
was sentenced to a term of imprisonment of 10 to
20 years. Defendant appeals as of right.

Helen Janson, an undercover police officer, and
Claudette Arle, an acquaintance of the defendant,
testified that defendant approached them and
handed them a packet with white powder inside.
This packet was a "fifty cent" bag of cocaine. The
undercover officer then gave defendant $50.

Defendant testified that he met the officer and
Arle on the day in question. Defendant originally
claimed the defense of entrapment. He claimed
that Arle motioned for him to come to their car.
She got out and asked him if he had some drugs.
Defendant then saw his brother-in-law from whom
defendant procured the cocaine. Defendant then
received $50 and gave the money to his brother-in-
law. The trial court rejected defendant's claim of
entrapment.

Defendant claims that the trial court made a
clear error when it found the defense of entrap-
ment unavailable to him. Defendant's claim is that
the trial court used the subjective test for entrap-
ment rather than the objective test. Michigan uses
the objective test for entrapment. *People v Turner,*
390 Mich 7, 22-23; 210 NW2d 336 (1973). During
the hearing, defendant failed to object to testi-
mony on the ground which he now asserts on

* Circuit judge, sitting on the Court of Appeals by assignment.

appeal. The failure to object precludes appellate review unless the alleged error results in manifest injustice. Here there was no manifest injustice because there was ample evidence to support the trial court's finding that the police did not manufacture this crime nor engage in any reprehensible conduct. *People v Gratzer,* 104 Mich App 705, 706-709; 305 NW2d 300 (1981), *People v Artuso,* 100 Mich App 396, 402-403; 298 NW2d 746 (1980). The trial court applied the objective test for entrapment.

Defendant also claims that the trial court erred when it failed to rule upon defendant's procuring agent defense at the entrapment hearing. The trial court's ruling on the procuring agent defense is as follows:

"This appears to be a lingering issue here concerning a procuring agent defense. I find, however, that the testimony of the defendant and Miss Arle is greatly disparating when it comes to that particular portion of the testimony. I find even from the defendant's own position that the procuring agent defense is not a defense which is not totally created by his testimony as it stands. Accordingly this court believes that this is not the appropriate time at the entrapment hearing to deal with that procuring agent defense and that further this court finds that to be so contradicted by this defendant's testimony that I do not find a preponderance of the evidence tipping in the direction of that defense anyway."

The validity of the procuring agent defense is of substantial doubt in this jurisdiction. *People v Auer,* 393 Mich 667, 678, fn 4; 227 NW2d 528 (1975). Assuming that the defense is available, we would be required to find the trial court's decision to be clearly erroneous and that the defense was proved by a preponderance of the evidence. The

opposite appears in the record. *People v Gratzer,*
*supra.*

Defendant also alleges that the trial court erred
in allowing the use of evidence of prior convictions
to impeach defendant's testimony. The court recog-
nized that it had discretion in the use of such
evidence to impeach defendant, *People v Jackson,*
391 Mich 323, 336; 217 NW2d 22 (1974), *People v*
*West,* 408 Mich 332; 291 NW2d 48 (1980), and the
record positively established that the trial court
exercised its discretion, *People v Cherry,* 393 Mich
261; 224 NW2d 286 (1974). See also *People v*
*Whigham,* 102 Mich App 96, 100-101; 300 NW2d
753 (1980), *People v Crawford,* 83 Mich App 35, 39;
268 NW2d 275 (1978). The trial court noted that
evidence of defendant's uttering and publishing
conviction, attempted receiving and concealing sto-
len property over $100 conviction, and breaking
and entering conviction was more probative of
defendant's credibility than its prejudicial impact.
The court did exclude evidence of a marijuana
conviction because (1) it was stale, and (2) it did
not involve theft, dishonesty, or a false statement.
The trial court did not abuse its discretion on this
issue.

Defendant claims that the trial court's decision
which granted the prosecution's motion to quash
defendant's subpoena *duces tecum* denied defen-
dant his right to compulsory process and confron-
tation. The prosecution alleged that the defen-
dant's subpoena was unduly burdensome and
vague. Defendant had requested "all records con-
cerning the number, type, and style of analysis
performed by Nancy Wagner May 15, 16, 17, 18,
19, 20, 21st of 1979. All samples used, all records
concerning the number and type of samples deliv-
ered or received by Nancy Wagner from the Tri-

County Metro from April 23rd to May 21st". The trial court did rule that the results and analysis of the materials which were to be used against defendant should be turned over to him. It ruled that any handwritten notes, reports or surveillance notes were the property of the prosecution and would be turned over only upon cross-examination of the prosecutor's witnesses. Accordingly, the court used its discretion and quashed defendant's subpoena *duces tecum.* Discovery should be granted when the information sought is necessary to a fair trial and a proper preparation of a defense, and not merely a fishing expedition. *People v Maranian,* 359 Mich 361, 368-369; 102 NW2d 568 (1960). This Court reviews the trial court's decision for an abuse of discretion. *People v Freeman (After Remand),* 406 Mich 514, 516; 280 NW2d 446 (1979). The refusal to grant discovery is not reversible error if defendant's rights can be fully protected by cross-examination. *People v Jesse Smith,* 81 Mich App 190, 198; 265 NW2d 77 (1978). Defendant's rights, in the case at bar, were adequately protected by cross-examination; accordingly, there was no reversible error. See *People v Anderson,* 88 Mich App 513, 517; 276 NW2d 924 (1979).

Defendant alleges that he was denied due process when the prosecutor secured a court order for a second analysis of the "controlled substance" without any prior notice to defendant. Defendant's claim apparently is that the failure to give notice of the prosecutor's attempt to secure an order to force the state police to conduct a second test denied him effective assistance of counsel and suppressed exculpatory evidence.

Defendant cites no authority for the proposition that he is entitled to notice prior to any testing or

orders for testing of incriminating evidence. We do not believe that he is entitled to that notice, particularly in the instant case where the order for the second test was necessary because the state police refused to conduct a second test without a court order. The order was necessary to resolve the problems between the prosecution and the state police. Defendant was informed of the results of the second test and was not denied the use of any exculpatory evidence. Any questions as to the result of the test were fully protected by the opportunity for cross-examination. *People v Bell,* 74 Mich App 270, 275; 253 NW2d 726 (1977).

Defendant alleges that the trial court refused to allow questioning at trial as to the need for the second test. Defendant, however, has not informed this Court as to where in the record such a denial occurred. After an examination of the record, we find one occasion which might be construed as a denial of defendant's right to question on the reasons for the second test, and this questioning and subsequent objection is as follows:

"*Q. (By defense counsel Mr. Colvert):* Were you told why they wanted a second test?

"*A.* Not specifically, no, sir.

"*Q.* As a chemist and a qualified expert in this court, do you have an opinion as to why they wanted you to run a second test?

"*Mr. Edwards (Assistant Prosecutor):* Objection, your Honor, as to what her opinion would be. It would be irrelevant.

"*Mr. Colbert:* Your Honor, she's a qualified expert. She can give an opinion in this area of why a second test might be necessary.

"*The Court:* That's asking to probe the thought processes of another person. I'll sustain the objection."

It is apparent that the question was not within the

witness's area of expertise, and the witness did not have any first-hand knowledge as to why the second test was to be run. Accordingly, the question was properly stricken as it was not based upon the perception of the witness. MRE 602, 701.

Defendant also claims as error the trial court's refusal to give the final sentence of CJI 3:1:04, which is as follows: "By stating that the prosecution must prove guilt beyond a reasonable doubt, I mean there must be such evidence that causes you to have a firm conviction to a moral certainty of the truth of the charge here made against this defendant." The trial court refused to give that portion of the instruction because the court was of the opinion that there was no adequate definition of what constituted a moral certainty of the truth of the charge. The court indicated that it had informed defense counsel, in advance of his closing argument, that that portion of the instruction would not be given.

Defendant had adequate notice that the instruction would not be given; therefore, no error can be predicated upon his assertion that closing argument was based upon his belief in the fact that that portion of the instruction would be given. Secondly, the court was not obliged to give a criminal jury instruction as it is written as long as the court adequately informed the jury of its duty. *People v Ritsema,* 105 Mich App 602; 307 NW2d 380 (1981). The trial court adequately apprised the jury of the high degree of certainty necessary to find defendant guilty beyond a reasonable doubt.

Finally, defendant claims that the prosecutor filed the information charging defendant as an habitual criminal too late under the rule in *People v Fountain,* 407 Mich 96, 98-99; 282 NW2d 168 (1979). The information charging defendant with

delivery of cocaine was filed on July 16, 1979. A supplemental information charging defendant as an habitual criminal was filed on August 15, 1979, which was amended on September 4, 1979, to change one conviction from "receiving and concealing" to "attempted receiving and concealing". Defendant's trial lasted two days, September 4 and 6, 1979. On September 6, 1979, defendant pled guilty to the habitual criminal charge. Sentencing occurred on October 10, 1979, at which he received 10 to 20 years.

In *People v Young,* 410 Mich 363, 367-368; 301 NW2d 803 (1981), the Michigan Supreme Court said as follows:

"We conclude that *People v Fountain* is applicable to cases pending on appeal on August 28, 1979, the date of decision in *People v Fountain,* provided the issue was raised during pendency of the appeal; and in cases, the original trial or guilty plea hearing of which concluded 20 days after the date of decision in *People v Fountain.*"

Certainly the Supreme Court meant that (1) all cases which were on appeal on August 28, 1979, would fall within the rule of *Fountain* and (2) that all cases in which the original trial was concluded or guilty plea was taken *more than* 20 days after August 28, 1979, would fall within the purview. In other words, the Court gave prosecutors a 20-day grace period to acquaint themselves with the rule.

Since this trial ended September 6, 1979, it fell within the 20-day grace period which removed it from the purview of *Fountain.*

The *Fountain* rules can be summarized as: (1) a prosecutor who knows a person has a prior felony record must promptly proceed, if at all, against the person as an habitual offender, (2) the prosecutor

is not foreclosed from proceeding against a person as an habitual offender after conviction on the current offense provided he is unaware of a prior felony record until after conviction, and (3) prosecutors are presumed to know of a prior felony record if their respective offices prosecuted the prior felonies. A delay in filing will be permitted when the delay is due to the need to verify out-state convictions based on the "rap sheet". *People v Westbrook,* 102 Mich App 296, 298; 301 NW2d 511 (1980).

We have decided that *Fountain* does not apply because it did not become applicable until September 18, 1979, as to original cases. The prosecutor filed the supplemental information by August 15, 1979. At least some of defendant's prior convictions were not in Ingham County and there is no showing that the prosecutor had, or should have had, knowledge of them when he filed the information. It was filed three weeks before trial.

The prosecutor therefore met the "promptly" requirement of *Fountain. People v Martin,* 100 Mich App 447, 453-459; 298 NW2d 900 (1980).

Affirmed.